UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Barbara Alker,
      Claimant

      v.                               Case No. 10-cv-291-SM
                                        Opinion No. 2011 DNH 075
Michael J. Astrue, Commissioner,
Social Security Administration,
      Respondent

**O R D E R**

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), Claimant, Barbara Alker, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.  The Commissioner objects and moves for an order affirming his decision.

**Factual Background**

I.   Procedural History

On August 13, 2007, claimant filed an application for disability insurance benefits under Title II the Act, as well as Supplemental Security Income benefits under Title XVI, alleging that she had been unable to work since September 1, 2000.  She asserts eligibility for benefits on the basis of physical and mental disabilities.  Her application was denied and she

requested an administrative hearing before an Administrative Law Judge ("ALJ").

On February 9, 2010, claimant and an impartial vocational expert appeared before an ALJ, who considered claimant's application de novo.  Claimant was not represented by counsel at the hearing.  On March 5, 2010, the ALJ issued her written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of light work, subject to several limitations.  Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, from September 1, 2000, through the date of the ALJ's decision.

Plaintiff was informed that the Decision Review Board had selected the ALJ's decision for review.  On June 4, 2010, the Decision Review Board appears to have affirmed the ALJ's decision,[1] thus rendering the ALJ's denial of claimant's application for benefits the final decision of the Commissioner, subject to judicial review.

---

[1]  The parties have stipulated in their Joint Statement of Material Facts (doc. no. 12) that the DRB "informed Plaintiff that it had not completed its review within the time allowed and that the ALJ's decision was the final decision of the Commissioner."  Document No. 12, pgs. 1-2.

Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act or, in the alternative, a remand for further administrative review. Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 9).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.   <u>Stipulated and Supplemental Facts</u>

Pursuant to this court's Local Rule 9.1(d), the parties submitted a statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion.

<b>Standard of Review</b>

I.   <u>Properly Supported Findings by the ALJ are Entitled to
Deference</u>

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are

conclusive if supported by substantial evidence.[2]  See 42 U.S.C. §§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  See also Rodriquez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)

---

[2]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

(citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those determinations are supported by specific findings.  <u>See</u> <u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health & Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).


II.  <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, claimant must prove that his

impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(g).  If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and

work experience.  <u>See, e.g.</u>, <u>Avery v. Secretary of Health & Human
Services</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote</u>, 690 F.2d
at 6.  When determining whether a claimant is disabled, the ALJ
is also required to make the following five inquiries:

> (1)   whether claimant is engaged in substantial
>        gainful activity;
>
> (2)   whether claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a
>        listed impairment;
>
> (4)   whether the impairment prevents claimant from
>        performing past relevant work; and
>
> (5)   whether the impairment prevents claimant from
>        doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if
his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I.   <u>Background – The ALJ's Findings</u>

In concluding that Ms. Alker was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability. Next, she concluded that claimant has the severe impairments of anxiety disorders, obesity, status post distal fibular fracture with non-union of the left lower extremity, neuroma of the right foot, affective disorders, and mild sclerosis of the hips. Administrative Record ("Admin. Rec.") 12. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. 12. Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform light work.[3]  She noted, however, that "claimant is limited to simple, repetitive, and routine tasks.  The claimant is also limited to working in an isolated work environment with occasional and brief contact with supervisors."  Admin. Rec. 14.  The ALJ concluded that claimant was capable of performing her past relevant assembly work. Admin. Rec. 17.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of a vocational expert as well as her own review of the medical record, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs existing in the national economy that [Claimant] is also able to perform," such as mail clerk, marker, addresser, document

---

[3]  "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

preparer, and type copy examiner. Admin. Rec. 18. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of her decision. Admin. Rec. 19.

II. <u>The Commissioner's Duty to Develop the Record</u>

Claimant argues for reversal of the Commissioner's final decision on several grounds, including that the ALJ breached her duty to fully develop the record. See <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 997 (1st Cir. 1991) (holding "ALJ had a duty to develop the record more fully" where doctor's reports were "[c]onspicuously absent" from the record). She claims that the ALJ should have obtained and considered several treating source records: the treatment notes of her psychologist and psychiatrist and March 2010 statements from those same providers.

It is undisputed that the ALJ did not have before her at the time she issued her decision on March 5, 2010, the treatment notes of claimant's psychologist, Dr. Sawyer, nor treatment notes beyond February 2009 for Dr. Eisen, claimant's psychiatrist. In addition, within days after the ALJ issued her decision, the Commissioner obtained additional medical evidence in the form of statements from Drs. Sawyer (dated March 10) and Eisen (dated March 15). The Commissioner admitted both pieces of new evidence

10

into the record, but the ALJ never saw the documents.  In its decision affirming the ALJ, the Decision Review Board ("DRB") stated that it had considered the new evidence submitted by Dr. Sawyer.  It found, however, that "this information does not provide a basis for changing the Administrative Law Judge's decision."  The DRB did not address, or even mention, the new evidence from Dr. Eisen.

The claimant contends that, by not ensuring that she had the treatment notes and the 2010 statements before her when she made her decision, the ALJ breached her duty to fully develop the record and that failure resulted in evidentiary gaps that undermined claimant's credibility.

Defendant counters that the ALJ fulfilled her duty by keeping the record open for an additional two weeks post-hearing and inviting the claimant to inform the ALJ if more time was needed to obtain additional records.  Defendant further contends that, in any event, claimant suffered no prejudice as a result of these evidentiary gaps because (1) Dr. Sawyer's treatment notes would add nothing to the ALJ's decision since the ALJ gave substantial weight to Dr. Sawyer's 2009 statement, and incorporated her findings into the RFC determination; (2) Dr. Sawyer's 2010 statement was also considered by the Decision

Review Board and found not to provide a basis for changing the ALJ's decision; and (3) although the DRB did not mention Dr. Eisen's 2010 statement, that evidence does not "differ much" from Dr. Eisen's 2009 statement.

"Although the burden is initially on the claimant to prove he is unable to perform his previous work, when a claimant is unrepresented, the ALJ has a heightened duty to develop the record." Mandziej v. Chater, 944 F. Supp. 121, 130 (D.N.H. 1996) (McAuliffe, J.) (citing Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)).  That duty requires the ALJ to "develop the record with specific information and without evidentiary omissions." Id.  Upon review of the record, the court "must determine 'whether the [alleged] incomplete record reveals evidentiary gaps which result in prejudice to the plaintiff.'" Id. (quoting Gauthney v. Shalala, 890 F. Supp. 401, 410 (E.D. Pa. 1995)).  "If the ALJ fails to fill those evidentiary gaps, and if they prejudice plaintiff's claim, remand is appropriate." Id. Prejudice is demonstrated by showing that "'the additional evidence might have led to a different decision.'" Gaeta v. Barnhart, No. 06-10500-DPW, 2009 WL 2487862, at *6 (D. Mass. Aug. 13, 2009) (quoting Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)).

Here, assuming that the absence of Dr. Sawyer's treatment
notes constitutes an evidentiary gap, there is no prejudice to
claimant.  Despite not having those notes, the ALJ gave
substantial weight to Dr. Sawyer's 2009 statement and
incorporated Dr. Sawyer's findings into the RFC determination.

As for Dr. Sawyer's 2010 statement, its absence did not
prejudice the claimant.  The DRB says it considered Dr. Sawyer's
2010 evidence and found that it did not provide a basis for
changing the ALJ's decision.  The court agrees.  The ALJ's RFC
determination limited claimant to "simple, repetitive, and
routine tasks."  Admin. Rec. 14.  Dr. Sawyer's 2010 statement is
not apparently inconsistent with those limitations.  Dr. Sawyer
notes marked limitations on claimant's ability to "make judgments
on simple work-related decisions," and ability to "understand and
remember complex instructions," and an extreme limitation on her
"ability to make judgments on complex work-related decisions."
Admin. Rec. 628.  Furthermore, regarding claimant's abilities to
"interact appropriately with supervision, co-workers, and the
public, as well as respond to changes in the routine work
setting," Dr. Sawyer's 2010 statement is identical to her 2009
statement, except that she noted, as to claimant's ability to
interact appropriately with the public, no limitation in 2009 and
a "moderate" limitation in 2010.  Admin. Rec. 615; 629.  For

13

these reasons, there is little reason to think the ALJ would have rendered a different decision had she reviewed Dr. Sawyer's 2010 statement.

With respect to Dr. Eisen's post-February 2009 treatment notes, claimant has not discussed precisely how she was prejudiced by their absence.  The court, therefore, will "not fault the ALJ for failing to secure [the] treatment notes." Faria v. Comm'r of Soc. Sec., 187 F.3d 621, 621 (1st Cir. 1998) (rejecting claimant's contention that the ALJ breached his duty to develop the record where no prejudice was established by the absence of the treatment notes) (per curiam).  See also Boutsianis v. Astrue, No. 07-cv-250-PB, 2008 WL 899361, at *9, n.3 (D.N.H. April 1, 2008) ("[B]ecause Boutsianis has failed to establish prejudice resulting from the ALJ's failure to obtain these treatment notes, I find that the ALJ did not fail to develop the record.").

Finally, while arguably (but for the claimant's failure to show prejudice), the absence of Dr. Eisen's *treatment notes* dated after February 2009 left an evidentiary gap for which the ALJ was responsible, the same cannot be said of Dr. Eisen's March 2010 statement.  That statement is more accurately characterized as non-cumulative "new evidence" of claimant's mental limitations at

14

or around the time of the hearing.  See Evangelista v. Secretary
of Health & Human Services, 826 F. 2d 136, 139 (1st Cir. 1987)
(evidence is "new/material" where it is "not cumulative").  The
question, therefore, is better framed as whether remand for
consideration of "new evidence" is warranted under sentence six
of § 405(g).[4]


      Section 405(g) authorizes a court to remand a case for
consideration of new evidence where the evidence is "material"
and claimant has shown "good cause" for not submitting the
evidence earlier.  42 U.S.C. § 405(g).  New evidence is material
if it "creates a 'conflict,' is 'contradictory,' or 'calls into
doubt any decision grounded in the prior medical reports.'"
Bryant v. Barnhart, 2005 WL 1804423, at *5 (W.D. Va. 2005).  On

_____

      [4]  While "it is unclear if plaintiff claims that . . . [the]
records constitute 'new' evidence," Mandziej,944 F. Supp. at 131,
the argument is addressed as if explicitly made.  See id.
(evaluating claimant's "failure to develop" argument as a "new
evidence" argument).

      In addition, as noted earlier, the record is unclear as to
the exact scope of the DRB's review/decision.  See supra, n.1.
Regardless of the scope, however, neither party claims that the
DRB ever considered Dr. Eisen's 2010 statement, even though it
admitted the statement into evidence.  In fact, defendant seems
to concede as much.  See Document No. 11-1, pg. 20 ("The DRB did
not state that it had considered the new evidence from Dr.
Eisen.").  Accordingly, in light of the absence of clarification
or argument by the parties to the contrary, the court regards Dr.
Eisen's report as new evidence never considered by the
Commissioner, as to which the question is whether § 405(g)
provides grounds for remand.

the other hand, evidence is not material if there is no

"'reasonable possibility that [it] would have changed the

outcome." Id. (quoting Wilkins v. Secretary of Health & Human

Services, 953 F.2d 93, 96 (4th Cir. 1991).

Dr. Eisen's 2010 statement is material because it conflicts

with Dr. Sawyer's 2009 statement (to which the ALJ afforded

substantial weight and from which she drew the RFC limitations)

and raises the reasonable possibility that claimant is unable to

work.[5]  In her 2009 statement, Dr. Sawyer noted a "marked"

limitation on claimant's ability to interact appropriately with

supervisors.  The ALJ incorporated this limitation into the RFC

determination (Admin. Rec. 16) as a limitation "to working in an

isolated work environment with occasional and brief contact with

supervisors."  Admin. Rec. 14.  In contrast, Dr. Eisen's

statement of March 15, 2010 (the new evidence) notes an "extreme"

---

[5]  Eisen's first statement, dated February 27, 2009, noted a
"moderate limitation" in claimant's ability to make judgments on
simple work-related decisions and a "marked limitation" in
claimant's ability to interact appropriately with supervisors.
The ALJ, however, gave "little weight" to Dr. Eisen's 2009
statement, finding that the statement was "inconsistent with Dr.
Eisen's own treatment notes."  Admin. Rec. 17.  Instead, she gave
substantial weight to Dr. Sawyer's 2009 statement.  The relevant
comparison, therefore, is not, as defendant suggests, between Dr.
Eisen's 2010 statement and his discredited 2009 statement, but
between Dr. Eisen's 2010 statement and Dr. Sawyer's 2009
statement.  However, even if a comparison of Dr. Eisen's two
statements were appropriate, there are material differences
between them.

limitation in claimant's ability to interact with supervisors. Admin. Rec. 634.  The degree to which claimant is or is not able to function in this area is a fundamental issue in this case. Indeed, the ALJ specifically questioned the Vocational Expert on that point:

> ALJ: "For the third hypothetical I want you to assume the same as the first, with the following modification, that the individual is unable to effectively interact with supervisors.  Would that change your response?"
>
> VE: "Your Honor, all jobs as they are usually performed locally and nationally involve some degree of supervision, and if a person had a total inability to be involved with a supervisory force for guidance or instructions, then that would preclude all jobs as usually performed locally and nationally."

Admin. Rec. 52.

The expert's answer necessarily suggests that Dr. Eisen's 2010 statement could change the outcome of the disability determination, particularly because Dr. Eisen is a treating physician.  See 20 C.F.R. § 404.1527(d)(2) (treating physician's opinion is given "controlling weight" as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and further, is "not inconsistent with the other substantial evidence in . . . [the] record.").

Finally, claimant has established good cause for not
submitting Dr. Eisen's 2010 statement during the two-week period
following the hearing which the ALJ held open for the submission
of additional evidence.  The Social Security Office may have made
at least one clerical mistake that delayed the submission of
medical opinions, although it is unclear which opinions were
affected by the mistake.  Accordingly, claimant's contention that
the records were delayed as a result of a clerical mistake is not
a wholly unsupported, ad-hoc allegation.  Compare Ciccariello v.
Apfel, 215 F.3d 1311 (unpublished table decision), No. 99-1874,
2000 WL 560232, at *1 (1st Cir. May 4, 2000) (good cause not
shown where record contained no evidence supporting post-hoc
allegation that poor record keeping by medical providers was
responsible for delay in submission of medical reports).
Further, unlike in Evangelista, the fact that claimant was
unrepresented by counsel at the time supports a good cause
finding.  In Evangelista, the claimant argued that "self-
representation of and by itself satisfie[s] the good cause
requirement." Evangelista, 826 F. 2d at 142.  The court rejected
that proposition, noting that the claimant "was a mature
individual who had worked in a variety of white-collar positions
requiring good comprehension and communicative skills." Id. Cf.
Mandziej, 944 F. Supp. at 130 (rejecting claimant's argument that
waiver of right to counsel was ineffective where plaintiff "is

18

college-educated").  In contrast, the ALJ's findings about
claimant's past work experience and educational background
establish that claimant never held a white collar job and her
highest educational attainment was a general equivalency diploma.
The ALJ further found that claimant was limited in her abilities
to "simple, repetitive, and routine tasks."  Under these
circumstances, and in light of the apparent clerical mistake by
the Social Security Office, claimant had good cause for not
submitting Dr. Eisen's 2010 statement earlier.

Because Dr. Eisen's 2010 statement is new and material
evidence and there is good cause for claimant's failure to
incorporate it into the record during the post-hearing period,
the case is remanded for reconsideration in light of the new
evidence.[6]

III. <u>Claimant's Remaining Objections</u>

Because claimant's argument that the ALJ should consider Dr.
Eisen's 2010 statement is meritorious and warrants remand, there
is no need to consider her remaining arguments.  It should be

---

[6]  Although claimant has not prevailed on her argument that
the Commissioner should be ordered to consider on remand Dr.
Eisen's post-February 2009 treatment notes, the notes may be
integrally tied to Dr. Eisen's March 2010 statement.  Although
the court does not order the Commissioner to consider those notes
on remand, it may make sense to do so.

noted, however, that with respect to claimant's contention that there is a conflict between the GED levels of reasoning in the Dictionary of Occupational Titles ("DOT") and the Vocational Expert's testimony, the majority of courts do not, as defendant correctly points out, recognize a "neat one-to-one parallel" between "the DOT's use of the word 'detailed' with the Social Security regulations' use of the word 'detailed instructions.'" Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005); see also Pepin v. Astrue, Case No. 09-464-P-S, 2010 WL 3361841, at *4 (D. Me. Aug. 24, 2010) (collecting cases).

## Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is granted to the extent she seeks a remand to the ALJ for further proceedings. The Commissioner's motion to affirm his decision (document no. 11) is denied.

Pursuant to sentence six of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent with this order.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

May 10, 2011

cc:  Raymond J. Kelly, Esq.
     Gretchen L. Witt, Esq.